UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

STEVEN DARBY MCDONALD,

        Plaintiff,

        v.

M. AIJAZ KHURSHID, *et al.*,

        Defendants.

Case No.  C04-5736RJB

REPORT AND
RECOMMENDATION

Noted for May 12, 2006

      This § 1983 Civil Rights matter has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. §§ 636(b)(1)(A) and 636(b)(1)(B) and Local Magistrates' Rules MJR 1, MJR 3, and MJR 4. This matter comes before the court on plaintiff's failure to cure certain deficiencies in his Amended Complaint (Doc. 4), as directed by the court, and upon numerous motions filed by plaintiff.  For the reasons set forth below, the undersigned recommends that the Court dismiss this matter for several reasons, including,  failure to state a claim, plaintiff's continued use of the court process to harass defendants, and prison officials, and plaintiff's vexatious behavior.

PROCEDURAL BACKGROUND

      On November 1, 2004, Plaintiff submitted the original complaint along with an application to proceed *in forma pauperis.*  After being granted *in forma pauperis* status (waiving the filing fee) the Complaint (Doc. 18) was filed by the court clerk on March 31, 2005.   However, on December 17, 2004, Plaintiff had filed an Amended Complaint (Doc. 4).  The court directed the Amended Complaint be served on the named defendants on March 31, 2005 (Doc. 19).

Following service of the Amended Complaint, the case and pending motions were delayed for a long period of time following the court's order directing service, due to Plaintiff's motion for recusal of the undersigned filed on May 25, 2005.  The Chief Judge denied this motion on July 25, 2005, and in the mean time, plaintiff had filed numerous repetitive motions and pleadings.  Immediately following the order denying plaintiff's motion for recusal, plaintiff filed a notice of appeal to the 9th Circuit (Doc. 115). Generally, a notice of appeal stays a case until the 9th Circuit has ruled on the matter, however, in this case, plaintiff continued to file motions, pleadings and letters with the clerk.

Despite the pending interlocutory appeal, on September 22, 2005, the court reviewed the record and issued an order addressing the pending motions.  The court decided it would be appropriate to appoint counsel to represent Mr. McDonald.  In the order the court informed plaintiff and the to be appointed attorney that one of the first issues to resolve would be the deficiency of the Amended Complaint, (Doc. 4), filed by plaintiff on or about December 17, 2004.   The court stated:

> Plaintiff's Amended Complaint incorporates requests for preliminary injunction, appointment of counsel and appointment of a guardian ad litem.  Plaintiff names four defendants in the complaint: (i) M. Aijaz Khurshid, a physician at Stafford Creek Corrections Center; (ii) Karen Saylor, a physician at McNeil Island Correctional Center; (iii) John Choe, a physician at McNeil Island Correctional Center; and (iv) Ronald Fleck, a physician at the Washington State Penitentiary.
>
> The Amended Complaint is deficient.  It does not state with any specificity what acts were allegedly done by any of the named defendants which harmed Plaintiff.  The Amended Complaint fails to state any specific cause of action against any one of the four named defendants.  Plaintiff attempts to incorporate the original Complaint, exhibits and documents filed along with the original complaint and a declaration filed in support of the Amended Complaint, but this is inadequate.  An Amended Complaint stands on its own.

*See* Doc. 168.  In accordance with the court's order  to draw on the pro bono panel and forward the name of an attorney who would be able to represent plaintiff in this matter, the Court Clerk proposed Ms. Stephanie Bloomfield, who was subsequently appointed by the court on October 4, 2005 (Doc. 175).

Approximately five weeks later, plaintiff filed a motion to discharge Ms. Bloomfield as his attorney (Doc. 182).   The court addressed this motion, along with Ms. Bloomfield's declaration made in response to the issues, in an order dated December 28, 2004.   The court granted plaintiff's motion and allowed Ms. Bloomfield to withdraw, but denied plaintiff's request for appointment of a different attorney.  The court explained that it was unreasonable for him to expect an attorney to take the  immediate actions he was demanding, and that it would take any attorney several weeks to make the necessary independent

1   investigation of his allegations to properly present the matter to the court.

2       The court reiterated the need for plaintiff to cure the deficiencies in his Amended Complaint,

3   including the failure of plaintiff to state any specific cause of action against any one of the four named

4   defendants.   The court further discovered that plaintiff had failed to disclose the fact that he had filed

5   several previous lawsuits in the past in which motions similar to those made in this case (such as the issue

6   of competency) had been presented.  Plaintiff was directed to address the deficiencies in his Amended

7   Complaint as well as the issue of his nondisclosures to the court in this matter, by no later than January 21,

8   2006.

9       To date plaintiff continues to file motions, pleadings, and letters which do not address the courts

10  concerns.  He continues to abuse the litigation process to harass parties and non-parties alike, often making

11  inappropriate, irrelevant, and disrespectful statements in his pleadings.  He has filed two documents which

12  are captioned as response to the court's order to show cause (Docs. 217, 219).  The pleadings do not cure

13  the deficiencies in his Amended Complaint.  Accordingly, the undersigned recommends that this matter be

14  dismissed.

<u>DISCUSSION</u>

15

16  **A.**    **PLAINTIFF'S FAILURE TO CURE DEFICIENCIES WITH HIS AMENDED COMPLAINT/FAILURE**
            **TO STATE A CLAIM**

17

18      A complaint is frivolous when it has no arguable basis in law or fact.  <u>Franklin v. Murphy</u>, 745 F.2d

19  1221, 1228 (9th Cir. 1984).  When a complaint is frivolous, fails to state a claim, or contains a complete

    defense to the action on its face, the court may dismiss an *in forma pauperis* complaint before service of
20

21  process under 28 U.S.C. § 1915(d).  <u>Noll v. Carlson</u>, 809 F.2d 1446, 575 (9th Cir. 1987) (*citing* <u>Franklin</u>

22  <u>v. Murphy</u>, 745 F.2d 1221, 1228 (9th Cir. 1984)).   A plaintiff must allege a deprivation of a federally

23  protected right in order to set forth a prima facie case under 42 U.S.C. §1983.  <u>Baker v. McCollan</u>, 443

    U.S. 137, 140 (1979).  In order to state a claim under 42 U.S.C. § 1983, a complaint must allege that (l)
24

25  the conduct complained of was committed by a person acting under color of state law and that (2) the

26  conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the

27  United States.  <u>Parratt v. Taylor</u>, 451 U.S. 527, 535 (1981), overruled on other grounds, <u>Daniels v.</u>

    <u>Williams</u>, 474 U.S. 327 (1986).  Section 1983 is the appropriate avenue to remedy an alleged wrong only if
28

    both of these elements are present.  <u>Haygood v. Younger</u>, 769 F.2d 1350, 1354 (9th Cir. 1985), cert.

1   denied, 478 U.S. 1020 (1986).  Recently the Ninth Circuit held that dismissal of prisoner's deficient

2   complaints is mandatory under the PLRA.  *See* Lopez v. Smith, 1998 WL 774639 (9th Cir., Nov. 9, 1998).

3        The Amended Complaint, filed on December 17 2004,  names four defendants: (i) M. Aijaz

4   Khurshid, a physician at Stafford Creek Corrections Center; (ii) Karen Saylor, a physician at McNeil Island

5   Correctional Center; (iii) John Choe, a physician at McNeil Island Correctional Center; and (iv)

6   Ronald Fleck, a physician at the Washington State Penitentiary.  Plaintiff alleges these four defendants have

7   violated his U.S. Constitutional Rights.  He seeks an "award of Seven Million Dollars ($7,000,000) for

8   deliberate indifference, pain and suffering and failure to treat", a liver transplant, and specific medical

9   diagnosis and treatment.  The factual allegations made in support of Plaintiff's Amended Complaint are

10  summarized as follows.

11       Plaintiff was transferred to McNeil Island Correctional Center on December 19, 2002.  While at

12  McNeil Island, he sought medical attention for abdominal pain, and he explained to Dr. Saylor that on June

13  20, 2001 (over 18 months earlier) the prison's Utilization Review Committee had approved an evaluation

14  at Virginia Mason Pain Clinic, but that he was never arranged.  He further informed Dr. Saylor  that Dr.

15  Harri  had approved interferon therapy on October 14, 2000, which was ultimately  approved by staff at

16  Washington State Penitentiary.  Plaintiff states that he asked Dr. Saylor to provide him with certain non

17  narcotic treatment, including specific vitamins to control his severe pains.  In addition, he requested and

18  sought specific testing to determine the cause of his pains.  Dr. Saylor informed plaintiff that he had

19  acquired a secondary blood disorder called Thrombocytopenia which prohibited him from being a

20  candidate for interferon therapy.  Dr. Saylor prescribed a high potency B-Complex vitamin, but did not

21  prescribe the Vitamin K plaintiff requested.  Dr. Saylor allegedly refused to refer plaintiff for any diagnostic

22  testing and refused to provide him with the medical attention and medication he demanded.  Dr. Fleck, a

23  physician at the Washington State Penitentiary, e-mailed Dr. Saylor and other medical staff stating that

24  nothing was wrong with Plaintiff and that he was only a drug addict and malingerer.  Based on information

25  from Dr. Fleck, Dr. Saylor instructed the medical staff to ignore Plaintiff's requests for medical attention.

26  Plaintiff alleges that due to systemic medical neglect by Defendant Saylor, "Plaintiff had been driven

27  psychotic from intractable abdominal pain, due to her failure to conduct or order any type of diagnostic

28  testing of his abdominal cavity and liver to evaluate the possibility of an occlusion within his gall bladder as

REPORT AND RECOMMENDATION
Page - 4

1  all his symptoms indicated and present medical history dictated." Dr. Saylor's actions allegedly caused a

2  six-month delay  before he could get a surgery to eventually remove his gallbladder.

3        On January 29, 2003, Plaintiff was referred to Dr. Choe, a private contract physician for the

4  Department of Corrections.  Plaintiff alleges Dr. Choe conspired with the other defendants, classifying

5  Plaintiff as a drug addict, drug seeker and a malingerer, who was psychologically unstable.  Plaintiff states

6  Dr. Choe's summary of Plaintiff's treatment was inaccurate, and Dr. Choe prohibited Plaintiff from

7  undergoing medical procedures approved by a different psychiatrist.   Plaintiff disagrees with Dr. Choe's

8  belief that he does not suffer from Adult Deficit Hyperactivity Disorder.  Plaintiff alleges Dr. Choe

9  maliciously wrote in Plaintiff's medical file that he was not to receive any type of narcotics, Tylenol or

10  aspirins for any physical ailment.

11        Eventually Plaintiff was transferred to Stafford Creek Corrections Center where he was seen and

12  treated by Dr.Khurshid.  Plaintiff alleges Dr. Khurshid failed to reply to letters, dated February 12 & 14,

13  2003,  from plaintiff's attorney, Hank Balson regarding Plaintiff's medical needs and history.  Dr. Khurshid

14  allegedly failed to provide diagnostic testing, neurological consultation, gastroentorologits evaluation or

15  prescription medication requested by Plaintiff.   Plaintiff claims Dr. Khurshid's failure to act on his

16  complaints caused over a three- month delay before he was allowed to have an ultrasound of his abdominal

17  cavity on May 14, 2003.  After Dr. Ali confirmed a problem with his gallbladder on June 12, 2003, Dr.

18  Khurshid finally allowed Mr. McDonald to receive pain medication (M.S. Contin Morphine pills), which he

19  was allowed to continue until Plaintiff had surgery to remove his gallbladder on July 18, 2003.   Plaintiff

20  alleges Dr. Khurshid switched his medication to Percocet several weeks later with deliberate indifference to

21  his ongoing pain and suffering.  Plaintiff further alleges Dr. Khurshid did not allow him to be evaluated by a

22  gastroentorologists or to have interferon treatment.  Plaintiff alleges Dr. Khurshid had Plaintiff transferred

23  to Clallam Bay Corrections Center on December 29, 2003, in retaliation for the grievances and complaints

24  Plaintiff had filed against Dr. Khurshid.

25        As noted by the court in its previous orders, the Amended Complaint filed and served on

26  defendants is deficient.  Specifically, it relies on facts and allegations that do not support a cognizable

27  claim, and the Amended Complaint erroneously incorporates other materials which are not attached to the

28  Amended Complaint.  On September 22, 2005, the court reviewed the record and issued an order directing

1     plaintiff to cure certain deficiencies.  To date Plaintiff has not adequately addressed the court's concerns.

2          Plaintiff's complaint fails to allege facts sufficient to support an Eighth Amendment claim of

3     inadequate  medical care.  A prison official's deliberate indifference to an inmate's serious medical needs

4     constitutes cruel and unusual punishment in violation of the Eighth Amendment. <u>Estelle v. Gamble</u>, 429

5     U.S. 97, 104 (1976); <u>Johnson v. Meltzer</u>, 134 F.3d 1393, 1398 (9th Cir.), *cert denied*,525 U.S. 840

6     (1998). To state a deliberate indifference claim, a prisoner plaintiff must allege both that the deprivation of

7     medical care in question was objectively serious, and that the defendant official acted with a subjectively

8     culpable state of mind. <u>Wilson v. Seiter</u>, 501 U.S. 294 (1991). The required showing of deliberate

9     indifference is satisfied when it is established that "the official knew of and disregarded a substantial risk of

10    serious harm to [the prisoner's] health or safety." <u>Johnson</u>, 134 F.3d at 1398 ( *citing* <u>Farmer v. Brennan</u>,

11    511 U.S. 825, 837 (1994)).

12         The courts have recognized that deliberate indifference to serious medical needs may be manifested

13    in two ways: "It may appear when prison officials deny, delay or intentionally interfere with medical

14    treatment, or it may be shown by the way in which prison officials provide medical care." <u>Hutchinson v.</u>

15    <u>United States</u>, 838 F.2d 390, 394 (9th Cir.1998) ( *citing* <u>Estelle v. Gamble</u>, 429 U.S. at 105). In either

16    case, however, the indifference to the inmate's medical needs must be purposeful and substantial;

17    negligence, inadvertence, or differences in medical judgment or opinion do not rise to the level of a

18    constitutional violation. <u>Jackson v. McIntosh</u>, 90 F.3d 330, 331 (9th Cir.), *cert. denied*,519 U.S. 1029

19    (1996); <u>Sanchez v. Vild</u>, 891 F.2d 240, 242 (9th Cir.1989); <u>Franklin v. Oregon State Welfare Div.</u>, 662

20    F.2d 1337, 1344 (9th Cir.1981).

21         A mere difference of opinion as to which medically acceptable course of treatment should be

22    followed does not establish deliberate indifference. <u>Sanchez v. Vild</u>, 891 F.2d 240, 242 (9th Cir.1989).

23    Where defendant doctors have chosen one course of action and a plaintiff contends that they should have

24    chosen another course of action, the plaintiff "must show that the course of treatment the doctors chose

25    was medically unacceptable under the circumstances, ⋯ and the plaintiff must show that they chose this

26    course in conscious disregard of an excessive risk to plaintiff's health." <u>Jackson v. McIntosh</u>, 90 F.3d 330,

27    332 (9th Cir.1996).

28         Here, Plaintiff has failed to submit any declarations from medical experts alleging that defendants'

treatment and care was beneath the standard of care required in the medical community. Plaintiff's claim for allegedly inadequate medical care is based solely on his disagreement with Defendants' medical evaluations of Plaintiff and their chosen course of treatments.  Plaintiff fails to present any probative evidence of the appropriate course of treatment for his condition. Plaintiff's own opinion as to the appropriate course of care does not create a triable issue of fact, because he has not shown that he has any medical training or expertise upon which to base such an opinion.

The facts alleged in the Amended Complaint demonstrate that Dr. Fleck, Dr. Saylor, Dr. Choe, and Dr. Khurshid each agreed that Mr. McDonald should not receive narcotic pain relief, as each felt or agreed that Mr. McDonald had demonstrated a drug seeking and malingering behavior in the past.  Nevertheless, the facts show that Dr. Saylor referred Plaintiff for an outside independent mental evaluation (by Dr. Choe) and Dr. Khurshid referred Plaintiff for an abdominal cavity ultrasound, which soon thereafter led to the surgical removal of Plaintiff's gallbladder.  This series of treatment (over a period of 4 to 5 months does not support plaintiff's Eighth Amendment claims.

Plaintiff's insistence on a particular type of medical testing and evaluation and certain drugs and vitamins to not support a cognizable claim.  A dispute between a prisoner and prison officials over the necessity for or extent of medical treatment does not raise a claim under § 1983. See Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir.1989); Shields v. Kunkel, 442 F.2d 409, 410 (9th Cir.1971); Mayfield v. Craven, 433 F.2d 873 (9th Cir.1970). The Ninth Circuit has applied this principle to disputes between physicians so that a difference of medical opinion between doctors over medical treatment does not amount to deliberate indifference to serious medical needs. Sanchez, 891 F.2d at 242. Plaintiff has provided no competent evidence to satisfy his burden of showing that Defendants chose a medically unacceptable course of treatment in conscious disregard of any risk to plaintiff's health. Based upon the evidence before the Court, Defendants were not deliberately indifferent to Plaintiff's serious medical need in violation of his rights under the Eighth Amendment.

In addition to lacking sufficient facts, Plaintiff's claims against Dr. Choe are legally deficient.  Dr. Choe appears to be a privately contracted physician, hired by the Department of Corrections to provide a mental examination and evaluation of Mr. McDonald.   Plaintiff does not present a § 1983 claim against Dr. Choe, who is a private party not acting under color of state law.  See Polk County v. Dodson, 454 U.S.

1   312, 317-18 (1981).

2       Finally, Plaintiff's complaint is also laced with allegations of retaliation in the form of denial of

3   medical care and transfers to other prison facilities.   To state a claim for retaliation, a plaintiff "must allege

4   both that the type of activity he engaged in was protected under the constitution and that the state

5   impermissibly infringed upon his right to engage in the protected activity." Rizzo v. Dawson, 778 F.2d

6   527, 531 (9th Cir. 1985).  As discussed above, plaintiff fails to state a claim of inadequate medial care, and

7   Plaintiff's claim of retaliatory transfer is similarly deficient.  A prisoner "has no justifiable expectation that he

8   will be incarcerated in any particular State or unit." Olim v. Wakinekoa, 461 U.S. 238, 245 (1983).

9       For the reasons discussed above the Court should find Mr. McDonald's Amended Complaint

10   deficient in form and substance.

11   **B.**     *PLAINTIFF'S ABUSE OF THE LEGAL PROCESS, HARASSMENT, AND VEXATIOUS BEHAVIOR*

12       Rule 11(b)(1) of the Federal Rules of Civil Procedure states:

13       **(b) Representations to Court.**  By presenting to the court (whether by signing,
filing, submitting, or later advocating) a pleading, written motion, or other paper, an
14   attorney or unrepresented party is certifying that to the best of the person's knowledge,
information, and belief, formed after an inquiry reasonable under the circumstances,--

15

16       (1) **it is not being presented for any improper purpose, such as to
harass or to cause unnecessary delay or needless increase in the cost of
litigation.**

17

18   Plaintiff's pleadings/letters submitted to the court have often violated this rule of civil procedure.  Since the

19   initial Complaint filed in this matter on or about November 1, 2004, plaintiff has continued to file repetitive

20   motions and frivolous requests which have been harassing in content, caused undue delay and expense to

21   litigate, and less than forthright.

22       The court previously addressed the issue of plaintiff's abuse of the legal process in its order dated

23   December 28, 2005.  As briefly outlined in the Procedural Background above, plaintiff has filed several

24   repetitive and frivolous motions in this matter.  To date Mr. McDonald has filed well over 100 requests

25   and motions in this case and the matter has not advanced past the complaint screening process.  Several of

26   the motions are lacking due to procedural and legal errors.  For instance Mr. McDonald makes several

27   motions to compel some kind of discovery or information (Docs. 31, 80, 89, 97, 101, 102, 103, 104, 105,

28   106, 136, 158, 141, 142, 164, 184, 212, 233, & 241). These motions generally are not properly supported

by a copy of the original discovery request or an explanation as to how he has attempted to procure the

1  information he is seeking without court intervention.   Similarly, Plaintiff has filed numerous motions,

2  which the court clerk has docketed as requests for "miscellaneous relief" (Docs.9, 24, 45, 53, 54, 55, 56,

3  58, 68, 69, 70, 72, 73, 74, 75, 76, 77, 79, 81, 82, 83, 90, 96, 98, 99, 100, 134, 135, 137, 140, 163, 177,

4  190, 194, 195, 203, 208, 209, & 211).   These motions and requests include additional discovery type of

5  requests (which are generally deficient for the same above noted reasons), motions for defendants or prison

6  officials to provide certain documents unrelated to the case, i.e., proof that defendants are homosexuals,

7  pedophiles, transvestites, (Doc. 58), motions for access to television, radio and video games (Doc. 56), and

8  a motion to have Plaintiff's name changed to "God Child" (Doc 79).   Plaintiff makes repetitive requests in

9  the above motions.   Plaintiff's repetitive requests have been noted in his numerous requests for recusal of

10  the undersigned (Docs. 47, 49, 214, 231, 234) and motions for appointment of counsel (Doc.8, 130, 189,

11  222), despite the fact that these issues have been ruled on by the court.

12          More troublesome is the content of many of his motions and requests.   Mr. McDonald makes

13  inflammatory and harassing statements toward every individual he has had any disagreement with in this

14  matter.   For example, defendants counsel has been the subject of many of Mr. McDonald's derogatory

15  statements, calling her and the entire Attorney General's staff evil and referring to her has "the evil one" or

16  a "drama queen."   In comparison to Dr. Fleck and the other physicians within the Department of

17  Corrections, Mr. McDonald's characterization of defense counsel is timid.   In numerous pleadings, Plaintiff

18  refers to Dr. Fleck as "Corn Flake" and he calls him a pedophile.   Other physicians and assistants are

19  referred to has lesbians, homosexuals, bull-dykes, Mexican bean farmers, and drug addicts.   Mr. McDonald

20  accuses the medical staff of having only an interest in playing with or viewing his penis.   At one point Mr.

21  McDonald made extremely inflammatory and inappropriate comments regarding the former Secretary of

22  the Department of Correction's son, who was convicted of a child sex crime several years ago.   These

23  comments and accusations are completely irrelevant to the matter at hand and are an extreme violation of

24  Rule 11's prohibition against using the legal process to harass other individuals.   See Docs 54, 56, 58, 69,

25  74, 75, 76, 81, 82, 231, 233, & 234 for examples of this misbehavior.        A prevailing civil rights

26  defendant is entitled to attorney fees only where the action brought is found to be "unreasonable, frivolous,

27  meritless, or vexatious." Patton v. County of Kings, 857 F.2d 1379, 1381 (9th Cir.1988).

28                                              CONCLUSION

1    Because Plaintiff fails to state a cognizable § 1983 constitutional claim in his Amended Complaint,

2    because Plaintiff failed to properly correct or attempt to cure the deficiencies in the Amended Complaint,

3    and because Plaintiff continues to abuse the legal process by raising irrelevant information in a vexatious

4    manner,  the Court should DISMISS this case as frivolous.  The Court should consider awarding attorney

5    fees to defendants in this matter.

6    Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal rules of Civil Procedure, the parties

7    shall have ten (10) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.

8    Failure to file objections will result in a waiver of those objections for purposes of appeal.  Thomas v. Arn, 474

9    U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter

10   for consideration on **May 12, 2006**, as noted in the caption.

11   DATED this 21st day of April, 2006.

13   */s/ J. Kelley Arnold*
     J. Kelley Arnold
     United States Magistrate Judge

REPORT AND RECOMMENDATION
Page - 10